**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TRINITY REPERTORY COMPANY<br>Plaintiff | : | |
| vs. | : | Case No. 06-169S |
| J. DANIEL LUGOSCH, III, a/k/a<br>DANIEL J. LUGOSCH<br>Defendant | : | |

**MOTION TO DISQUALIFY**

Defendant, J. Daniel Lugosch, III ("Lugosch") hereby moves to disqualify John J. McConnell, Jr. ("McConnell") from appearing in this matter as counsel for Plaintiff, Trinity Repertory Company ("Trinity"). McConnell is a necessary witness in this case, and his dual rule of advocate and witness is likely to prejudice Lugosch's rights. Accordingly, pursuant to Rule 3.7 of Rhode Island's Rules of Professional Conduct, McConnell should be prohibited from serving in this matter as counsel for Trinity. In support of this motion, Lugosch refers to the accompanying memorandum.

Respectfully submitted,

DEFENDANT J. DANIEL LUGOSCH, III

By: /s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (#5069)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

Dated: September 5, 2006

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing *Motion to Disqualify* was sent through the ECF system on the 5th day of September, 2006 and will be sent electronically to the counsel named below who are registered participants identified on the Notice of Electronic Filing.

*John J. McConnell, Jr., Esq.*
*MOTLEY RICE, LLC*
*321 South Main Street*
*P.O. Box 6067*
*Providence, RI 02940*

/s/ Elvira Hanson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TRINITY REPERTORY COMPANY<br>Plaintiff | : | |
| vs. | : | Case No. 06-169S |
| J. DANIEL LUGOSCH, III, a/k/a<br>DANIEL J. LUGOSCH<br>Defendant | : | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

Defendant, J. Daniel Lugosch, III ("Lugosch") hereby submits this Memorandum in Support of Motion to Disqualify John J. McConnell, Jr. ("McConnell") from appearing in this matter as counsel for Plaintiff, Trinity Repertory Company ("Trinity"). Article V, Rule 3.7 of the Rhode Island Supreme Court Rules of Professional Conduct prohibits a lawyer from "act[ing] as advocate at a trial in which the lawyer is likely to be a necessary witness," subject to certain exceptions not relevant here. McConnell is a necessary witness in this case, and his dual rule of advocate and witness is likely to prejudice Lugosch's rights. Accordingly, McConnell should be prohibited from serving in this matter as counsel for Trinity.

## I. FACTS

McConnell is currently the Chairman of Trinity's Board of Trustees and, at all times relevant to this suit, was a member of that Board. As set forth below, he was a central player in Trinity's efforts to obtain a donation from Lugosch.

Lugosch is a partner in Providence Place Group, LLP ("PPG"), the entity that initially owned the Providence Place Mall (the Mall"). In or about March 2004, PPG needed to obtain an estoppel certificate from the City of Providence (the "City") in

connection with PPG's sale of the Mall.[1] Lugosch and his counsel, Richard Licht, met with Mayor Cicilline to discuss PPG's request for the estoppel certificate.

At the meeting, the Mayor suggested that PPG might have ongoing obligations under one of the original contracts related to the Mall's development -- specifically, the contract provision that required PPG to devote time and resources to the development of a Downcity Cinema in Providence (the "Downcity Cinema provision"). Lugosch and Licht both firmly asserted at the meting that PPG owed no ongoing performance under the Downcity Cinema provision. They informed the Mayor that PPG had previously obtained three estoppel certificates from the City, two during Mayor Cianci's administration and one from Mayor Cicilline's own administration.

The Mayor acknowledged at the meeting that there may not be any ongoing obligation under the Downcity Cinema provision, but he said that the issue presented a political problem for him. At that point, the Mayor suggested that the issue could be resolved by PPG making a charitable donation to one of the City's arts organizations. The Mayor proposed that PPG donate a million dollars to Trinity's capital campaign. Lugosch indicated at the meeting that he or PPG would be willing to contribute a million dollars to Trinity if PPG obtained its estoppel certificate for the sale of the Mall and if proper recognition were given by Trinity for that substantial donation.

Thereafter, in or about July of 2004, Trinity submitted a proposal to Lugosch for a one million dollar donation. See Exhibit 1.[2] But Trinity had the $1 million donation

---

[1] An estoppel certificate is a signed certification that "binds the signatory to the statements made and estops that party from claiming to the contrary at a later time." *Plaza Freeway L.P. v. First Mountain Bk.*, 81 Cal. App. 4th 616, 626 (2000). In this case, the certificates acknowledge that PPG is not in default of any obligations under its contracts with the City.

[2] The proposal is addressed to Commonwealth Development Group, the affiliate of PPG that actually constructed the Providence Place Mall.

from PPG in its sights long before Mayor Cicilline cornered PPG for the money at his meeting with Lugosch in March 2004. Four months prior to Lugosch's meeting with the Mayor, Trinity circulated internally a draft of a written solicitation for a donation from Lugosch. See Exhibit 2. Trinity, along with the rest of Providence, knew from the media reporting at that time that PPG was planning to sell the Mall. See Exhibit 3. At the time, Trinity was conducting a capital campaign to renovate a former Citizens bank building into a theatre and education center. The Mayor was well aware of Trinity's capital campaign (the City had pledged funds for the campaign) and the fact that it had a $1 million gap to fill. See Exhibit 1 p. 3. It appears that the Mayor's office and Trinity discussed the possibility of the Mayor using his office to obtain a donation from the Mall's outgoing owners for the $1 million needed to complete Trinity's capital campaign. If such discussions took place, McConnell was likely a participant in them. The documents and events discussed below establish that he served as the primary liaison between Trinity and the Mayor's office.

McConnell, then a member of Trinity's Board of Trustees, assisted in the preparation of the written proposal that was submitted to Lugosch in July 2004. Among other things, in an e-mail dated July 22, 2004, he provided specific comments to Trinity's staff for the wording of the proposal. See Exhibit 4. Most significantly, McConnell noted in his suggestions

> I would delete the "(valued at $1 million)" form [sic] the third line under Project History (they may think: " why should Citizen [sic] give a million and get the theater named after them and not Commonwealth"); similarly, I would delete the "$1 million" form [sic] the paragraph right under the picture of the theatre under construction

Significantly, McConnell anticipated what ultimately became the breaking point in the discussions between Trinity and Lugosch over the proposed million dollar donation - - the appropriate recognition for the donation. As McConnell foresaw, Lugosch expected that more significant recognition be given for his pledge than that of Citizens, which donated a building but no cash. Lugosch intends to call McConnell as a witness at trial to lay a foundation for the admission of his e-mail as an exhibit and to obtain his testimony regarding its contents.

Trinity's proposal, with McConnell's edits, was transmitted to Lugosch in early July. At or about the same time, McConnell was contacting Lugosch's employee, John Charters, to set up a meeting at which Lugosch could tour Trinity and his offer of a donation could be discussed further. The meeting took place later in July. The attendees were Lugosch, Charters, McConnell and Edgar Dobie, Trinity's managing director. McConnell played an active role in that meeting discussing the donation with Lugosch.

After the meeting, McConnell wrote John Charters, stating

> I just wanted to thank you for arranging the meeting yesterday at Trinity. I hope that we were able to covey the excitement that we all feel about the possibility of the Lugosch/Commonwealth donation and our ability to build and open a first-class third stage for Trinity's new work.

See Exhibit 5. This letter confirms that McConnell was, up to this point, the principal contact between Trinity and Lugosch. Lugosch intends to examine McConnell at trial about the letter quoted above. Among other things, the letter acknowledges that as of July 2006, the donation was still only a "possibility." This is a critical admission, as Trinity asserts in this action that Lugosch committed to the donation in March 2006.

In the months after Lugosch's meeting with Trinity, Trinity negotiated with John Charters regarding the terms of the proposed donation. Lugosch offered to pay $1 million in equal installments over ten years subject to receiving appropriate recognition. The parties negotiated over a long period, during which Trinity presented different schemes of recognition. Trinity was informed that Lugosch expected to have the theatre named after him. Trinity was unwilling to do that. At first, Trinity proposed to acknowledge Lugosch's gift with a plaque in the lobby. Subsequently it agreed to put his name on the front of the building along with the names of Citizens Bank and Senators Pell and Chaffee. However, issues remained regarding the signage and prominence to be accorded to Lugosch's name. The parties never reached an agreement on those issues.

On June 1, 2005, McConnell organized a meeting between Trinity and Mayor Cicilline to discuss, among other things, Trinity's cash flow problems caused by financing cuts passed by the City Council. At the meeting, Trinity also informed the Mayor about the status of its negotiations with Lugosch. See Exhibit 6.

In a last ditch effort to secure an agreement, Trinity made a counter-offer to Lugosch. It offered to give Lugosch's name a more prominent position on the front of the building, but only if Lugosch agreed to pay the donation in a lump sum rather than over ten years as he had offered. According to an e-mail McConnell wrote to the Mayor's counsel on August 11, a copy of which was sent to Mayor Cicilline, it was the Mayor's suggestion that Trinity counteroffer and require that the donation be paid in a lump sum (presumably this was to alleviate

the cash-flow problems caused by the City Council's funding cuts). Lugosch rejected this material change to his offer.

On August 11, 2005, McConnell e-mailed the Mayor's legal counsel, Michael Mello, with a copy to the Mayor himself, asking that they intervene to help finalize the Lugosch donation. See Exhibit 7. McConnell's e-mail to Mello makes clear that McConnell had ongoing conversations with the Mayor's office regarding Lugosch's offer of a pledge to Trinity. For example, the August 11 memo states "as you know we have been having lots-o-trouble getting Dan Lugosch's one million for Trinity." The second paragraph of the e-mail also refers to prior conversations McConnell had with Mello on the subject. Lugosch intends to present evidence regarding those conversations to the jury in this case to establish that Trinity never accepted his offer and, instead, at the suggestion of the Mayor (as apparently discussed with McConnell), Trinity counter-offered to give Lugosch the recognition he was seeking but only if Lugosch would agree to make his donation in a lump sum payment rather than over ten years as he had offered.

McConnell's prominence in organizing and attending the June 2005 meeting with the Mayor and the tone and content of his follow-up e-mails further support the conclusion that he was and is the Trinity's primary contact with the Mayor. His role as such, as well as his other actions described above, makes him a necessary witness in this action.

## II. ARGUMENT

McConnell should be disqualified from representing Trinity in this matter. "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except under certain circumstances not applicable here. R.I. Sup. Ct. Rules of

Professional Conduct Rule 3.7(a).[3] An opposing party may properly object to an attorney's representation where his dual role as lawyer and witness may prejudice the opposing party's rights in the litigation. *Commentary*, R.I. Sup. Ct. Rules of Professional Conduct Rule 3.7. The prejudice arises out of the ambiguity of the lawyer's conduct. "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others." *Id.* The finder of fact has no way to discern whether any particular statement made by the advocate-witness "should be taken as proof or as an analysis of the proof." *See id.*

The purposes served by Rule 3.7 are well recognized. First, the rule neutralizes "the possibility that, in addressing the jury, the lawyer will appear to vouch for his own credibility." *Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 99 (1st Cir. 1988) citing *Bottaro v. Hatton Associates,* 680 F.2d 895, 897 (2d Cir. 1982). Second, the rule minimizes the "unfair and difficult situation" of opposing counsel cross-examining the lawyer-witness and impeaching his credibility. *Id.* Finally, the rule eliminates the appearance of impropriety arising out of the implication that the lawyer is distorting the truth to the benefit of his client and, correspondingly, to the detriment of the opposing party. *Id.*

To certain commentators, the paramount justification for the disqualification of the lawyer-witness is the protection of the profession from the perception of the public that an attorney will lie for the sake of his client. *See 6 Wigmore on Evidence §1911 (3d ed. 1940)*. As the Second Circuit has noted:

> Almost every party to a civil lawsuit (and his agents) is suspect of stretching the truth for his own cause, and to the most cynical, the very

[3] In accordance with D.R.I. LR 208(a), the Rhode Island Supreme Court Rules of Professional Conduct are applicable to practice before this Court.

> service of the complaint is a prelude to perjury. When we deal with what the public thinks, we must be careful not to accept the view of the most cynical as the true voice of the public, lest we accept a lack of faith in our institutions as a categorical basis for restricting otherwise quite ethical conduct.

*International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir. 1975). Further, the ABA background materials to Rule 3.7, which have been substantially incorporated into the *Commentary* to the rule, state that the "most cogent rationale" for Rule 3.7 is to protect the integrity of the advocate by eliminating any opportunity to mix law and fact and to prevent a lawyer from "injecting his or her personal belief as to the cause into the lawyer's argument to the jury." *Id.* at 100, citing *Annotated Model Rules of Professional Conduct, ABA,* Rule 3.7, Legal Background, at 251-52; *see also* A. Enker, *The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in the Same Case,* 1977 Am. B. Found. Research J. 455.

Turning to the case, *sub judice*, Lugosch is likely to suffer prejudice if McConnell is permitted to represent Trinity in this matter. Whether an opposing party suffers prejudice depends upon the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with other witnesses. *Commentary*, R.I. Sup. Ct. Rules of Professional Conduct Rule 3.7. The rule is often addressed in cases where the lawyer-witness must testify in his client's case; however, "[w]hen the attorney is called to the stand by his client's opponent, the concerns are just as substantial, if not more." *Ahern v. Scholz*, 85 F.3d 774, 791 (1st Cir. 1996); *see also Siguel v. Allstate Life Ins. Co.,* 141 F.R.D. 393, 396 (D. Mass. 1992) ("Although there are degrees of adverse testimony, there are few, if any, situations that justify acceptance or continued employment in this circumstance"). It is irrelevant that the

lawyer reasonably believes that his testimony is favorable to his client, because he is still subject to cross examination. *Siguel*, 141 F.R.D. at 396.

McConnell was substantially involved in the events giving rise to Trinity's complaint. First, McConnell attended the July 2004 meeting between Lugosch and Trinity at which Lugosch's offer of a donation was discussed. McConnell was more than a passive observer at that meeting. He actively participated in Trinity's efforts to secure a pledge from Lugosch.

Second, McConnell advised Trinity on how to couch its proposal to Lugosch. He warned Trinity not to refer to a million dollar contribution by Citizens Bank because "[Lugosch and Commonwealth] may think: Why should Citizen [sic] give a million and get the theater named after them and not Commonwealth."[4] McConnell's testimony regarding this advice will be sought by Lugosch to support the reasonableness of Lugosch's insistence on appropriate recognition.

Third, as the evidence will demonstrate at trial, Trinity coordinated with the Mayor's office to obtain Lugosch's offer of a donation, and it sought the Mayor's assistance to "finalize" the donation. Correspondence already produced indicates that McConnell acted as the principal liaison between Trinity and the Mayor's office, including requesting help from the Mayor's office to pressure Lugosch to finalize an agreement.

Fourth, documents authored by McConnell contain significant admissions that Lugosch will seek to use against Trinity at trial. For example, McConnell's July 22 e-mail acknowledges that Lugosch had not yet committed to making a donation to

[4] Based upon documents produced in this matter, at that point in time, McConnell did not view himself as acting as attorney for Trinity, and indeed was not acting as an attorney, but as a member of Trinity's Board of Trustees.

Trinity. Similarly, his August 11, 2006 e-mail to Mello also contains an admission that it was the Mayor's idea to counter-offer that Lugosch make his proposed donation in a lump sum. Upon information and belief, the change was proposed to ameliorate the cash flow problem caused by the City Counsel's funding cuts. Given McConnell's extensive involvement as a principal actor in the events giving rise to this action, Lugosch will be significantly prejudiced unless McConnell is disqualified as Trinity's attorney in this matter.

McConnell has already suggested that he is not a "necessary witness" in this matter" because other individuals were always present and could testify to the events he witnessed. A necessary witness is undefined by the rule and a somewhat elusive concept. A lawyer who is likely to be a necessary witness has been described as one "who has crucial information in his possession which must be divulged." *Electronic Laboratory Supply Co., Inc. v. Motorola, Inc.*, 1990 WL 96202, *2 (E.D.Pa. 1990), quoting *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.,* 546 F.2d 530, 538-39 n. 21 (3d Cir.1976), *cert. denied,* 430 U.S. 984 (1977)). "Although whether counsel will actually testify is not determinative, the necessity standard requires more than mere speculation that counsel will do so." *Id.*

Additionally, an attorney who takes an "active role in...the subject matter of th[e] litigation has sufficient personal knowledge of material facts that he ought to be called as a witness" and disqualified. *American Hospital Supply Corp. v. Roy Lapidus, Inc.*, 493 F. Supp. 1076, 1078 (D. Mass. 1980); *see also Siguel v. Allstate Insur. Co.*, 1995 WL98240 * 6 (1st Cir. 1995) *cert. denied,* 116 S. Ct. 672 (1995) ("Disqualification is appropriate where an attorney is intimately involved in the events that form the subject

matter of the action"). There is some authority that an attorney is a "necessary witness" where the testimony is relevant and material and unobtainable elsewhere. *Security Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 335, 718 P.2d 985, 988 (1986). However, it also has been stated that the availability of other competent witnesses for the same testimony does not automatically render a named attorney "unnecessary." *Fognani v. Young*, 115 P.3d 1268, 1273 (Colo. 2005).

McConnell's argument against disqualification on the ground that he is not a necessary witness is unpersuasive. First, much of McConnell's testimony will be unobtainable from other sources. Only McConnell can testify about the e-mails he wrote, several of which are central to the defense. His interaction with the Mayor's office and e-mails with Trinity are directly relevant to this cause of action, and his testimony is integral to Lugosch's defense. Second, among the concerns addressed by Rule 3.7 is that the lawyer-witness may have the opportunity to mix law and fact inject his personal belief as to the cause into his argument to the jury. Unless disqualified, McConnell will be given the opportunity to argue Trinity's case to the jury. By the end of trial, the jury will know that McConnell was present at meetings and participated in the subject matter of this litigation. Regardless of whether inadvertent or intentional, there is a strong likelihood that McConnell will inject his own recollection of the events into his argument. However, even if he does not, the jury may believe that McConnell is inserting his own personal perspective into the matter. Rule 3.7 is designed to prevent this circumstance.

## III. CONCLUSION

For the foregoing reasons, Lugosch respectfully requests that this court disqualify John J. McConnell, Jr. from representing Trinity in this matter.

Respectfully submitted,

DEFENDANT J. DANIEL LUGOSCH, III

By: /s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (#5069)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing *Memorandum in Support of Motion to Disqualify* was sent through the ECF system on the 5th day of September, 2006 and will be sent electronically to the counsel named below who are registered participants identified on the Notice of Electronic Filing.

*John J. McConnell, Jr., Esq.*
*MOTLEY RICE, LLC*
*321 South Main Street*
*P.O. Box 6067*
*Providence, RI 02940*

/s/ Elvira Hanson

\Lugosch, Daniel\Trinity Rep\Pleadings\USDC - 06-0169\Memo Mot. Disqualify 09-05-06